IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ELLIOT K. ANDERSON, | : |
| | : |
| Petitioner | : |
| | : CIVIL NO. 1:12-CV-0600 |
| | : |
| v. | : Hon. John E. Jones III |
| | : |
| | : |
| WARDEN BLEDSOE, | : |
| | : |
| Respondent | : |

## **MEMORANDUM**

July 31, 2012

**THE BACKGROUND OF THIS MEMORANDUM IS AS FOLLOWS:**

Petitioner Elliot K. Anderson ("Petitioner" or "Anderson"), an inmate presently confined at the United States Penitentiary Lewisburg ("USP Lewisburg") in Lewisburg, Pennsylvania, initiated the above action *pro se* by filing a Petition for Writ of Habeas Corpus ("Petition") under the provisions of 28 U.S.C. § 2241.  (Doc. 1.) He alleges that his right to due process was violated during disciplinary proceedings that resulted in a finding that he was guilty of the offense of Possession, Manufacture, or Introduction of a Weapon, Dangerous Chemical, Explosive or any Ammunition, in violation of Code 104.

By Order dated April 26, 2012, we directed service of the Petition on

Respondent and directed Respondent to file an answer within twenty-one (21) days. (Doc. 4.) On May 17, 2012, Respondent filed a Response to the Petition (Doc. 5) along with supporting exhibits[1] (Doc. 5-1). Although our April 26 Order provided Anderson with the opportunity to file a reply brief (*see* Doc. 4 at 2 ¶ 4), the docket reflects that no reply brief has been filed. Accordingly, the Petition is fully briefed and ripe for review. For the reasons set forth herein, the Petition will be denied.

## I.   FACTUAL BACKGROUND

Anderson presently is serving a 210 month sentence imposed by the United States District Court for the Middle District of Florida on February 13, 2003 for firearm related charges. (Doc. 5-1 at 1[2], Romano Decl., ¶ 2; Attach. A.) As of the date of this Memorandum, the BOP Inmate Locator System reflects that his projected release date via good conduct time release is August 3, 2018.[3]

On April 7, 2009, while Anderson was confined at the United States Penitentiary Hazelton ("USP Hazelton") in Bruceton Mills, West Virginia, Incident

---

[1]Respondent submitted the Declaration of Michael S. Romano, an Attorney Advisor employed by the BOP at USP Lewisburg (Doc. 5-1, Ex. 1), in which he refers to the following attachments: a copy of Petitioner's Public Information Inmate Data as of May 2, 2012 (Attach. A); and a copy of the DHO Packet for Incident Report No. 1856077 (Attach. B).

[2]Throughout this Memorandum, all citations to page numbers of documents filed to the docket in this action are to the page numbers generated by the CM/ECF System.

[3]*See* BOP Inmate Locator, available at http://www.bop.gov/iloc2/LocateInmate.jsp

Report #1856077 was delivered to him charging him with the offense of Possession, Manufacture, or Introduction of a Weapon, Dangerous Chemical, Explosive or any Ammunition, in violation of Code 104.  (Doc. 5-1 at 12-13, Incident Report.) Reporting Officer T. Knotts provided the following description of the incident in the report:

> On April 6, 2009 at approximately 1745, while conducting a random cell search of cell 23, which is occupied by inmate Anderson, Elliot reg. #29849-018 and inmate [   ], I found a homemade weapon made from a piece of melted plastic, approximately 6 ½ inch[es] long, with a part of a brown glove and string as a handle and sharpened to a point on one end. The weapon was found inside two blanket[s] on the top bunk.  The homemade weapon was confiscated.

(*Id.* ¶ 11.)

On April 28, 2009, the Unit Discipline Committee  ("UDC") referred the charge to the Discipline Hearing Officer ("DHO") for further hearing as the severity of the charges warranted consideration for sanctions higher than those the UDC can impose. (*Id.* § II ¶¶ 19, 21.)  On the same date, Anderson was provided with a Notice of Discipline Hearing before the DHO (*id.* at 17) and an Inmate Rights at Discipline Hearing Form (*id.* at 14).

A DHO hearing was conducted on May 2, 2009.  (*Id.* at 7, DHO Report, § I ¶ B.) At the outset of the hearing, the DHO advised Anderson of his rights, and Anderson indicated that he understood them.  (*Id.* § III ¶ B.)  Anderson also waived

3

his right to his previously requested staff representative.  (*Id.* § II ¶ A; at 8 § V; at 17.)

Anderson was afforded the opportunity to provide a statement, which he chose to do.

(*Id.* at 7 § III ¶ B.)  The following is the summary of his statement, as set forth in the

DHO Report:

> Inmate Anderson acknowledged receiving a copy of the incident report
> and stated he understood his rights before the DHO.  DHO Lohr read
> aloud Section 11 of the Incident Report and asked Inmate Anderson if the
> report was true.  Inmate Anderson stated that he was on the lower bunk
> and that it was not his knife.  Anderson told the DHO inmate Haynes was
> supposed to have put it there and that he left for chow.

(*Id.*)  Anderson was provided with the opportunity to present witness testimony

through the Notice of Discipline Hearing Form provided to him on April 28, 2009, but

elected not to call any witnesses.  (*Id.* at 17; at 7 § III ¶ C.)  He also was afforded the

opportunity to provide documentary evidence, but he stated that he had no

documentary evidence to present.  (*Id.* at 8 § III ¶ D, § V.)  As such, as documented by

the DHO, in addition to the Incident Report, the only other evidence before her for

consideration was a digital photograph of the homemade weapon and the Chain of

Custody Log dated April 6, 2009.  (*Id.*)

Upon consideration of the evidence, the DHO determined that Anderson

committed the prohibited act of Possession, Manufacture, or Introduction of a

Weapon, Dangerous Chemical, Explosive or any Ammunition, in violation of Code

104.  (*Id.* §§ IV, V.)  The DHO sanctioned Anderson with the disallowance of forty

(40) days of good conduct time; thirty (30) days of disciplinary segregation, with fifteen (15) days suspended pending 180 days of clear conduct; ninety (90) days loss of commissary privileges; and ninety (90) days loss of telephone privileges. (*Id.* at 9 § VI.)

**II.   DISCUSSION**

The Fourteenth Amendment of the United States Constitution provides in pertinent part as follows: "No State shall . . . deprive any person of life, liberty, or property, without due process of law . . . ."  Federal inmates possess a liberty interest in good conduct time.  *See Wolff v. McDonnell*, 418 U.S. 539, 555-57 (1974); *Young v. Kann*, 926 F.2d 1396, 1399 (3d Cir. 1991).  Accordingly, "[h]abeas corpus relief is available to a prisoner who has been sanctioned in violation of due process to a loss of good conduct time." *Robinson v. Warden*, 250 Fed. Appx. 462, 464 (3d Cir. 2007).

In *Wolff*, where the plaintiffs were deprived of good time credits as a severe sanction for serious misconduct, the Supreme Court held that such inmates had various procedural due process protections in a prison disciplinary proceeding, including the right to call witnesses and to appear before an impartial decision-maker. 418 U.S. at 563-73.

In particular, the Court recognized that "prison disciplinary proceedings are not

5

part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply." *Id.* at 556. Nonetheless, the Court held that a prisoner facing serious institutional sanctions is entitled to some procedural protection before penalties can be imposed. *Id.* at 563-71. The Court set forth the following five requirements of due process in a prison disciplinary proceeding: **(1)** the right to appear before an impartial decision-making body; **(2)** twenty-four hour advance written notice of the charges; **(3)** an opportunity to call witnesses and present documentary evidence, provided the presentation of such does not threaten institutional safety or correctional goals; **(4)** assistance from an inmate representative, if the charged inmate is illiterate or if complex issues are involved; and **(5)** a written decision by the fact finders as to the evidence relied upon and the rationale behind their disciplinary action. *Id.*

Where the due process requirements of *Wolff* are met, the decision of the hearing examiner will be upheld if there is "some evidence" to support the decision to revoke good time credits. *Superintendent v. Hill,* 472 U.S. 445, 455 (1985); *see also Young,* 926 F.2d at 1402-03 (applying *Hill* standard to federal prisoner due process challenges to prison disciplinary proceedings). The determination of whether the standard is satisfied "does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence. Instead, the

relevant question is whether there is *any* evidence in the record that could support the conclusion reached by the disciplinary board." *Hill*, 472 U.S. at 455-56. Under *Hill,* judicial review of a prison disciplinary decision is limited to ensuring that the prisoner was afforded certain procedures, the action against him was not arbitrary, and that the ultimate decision has some evidentiary support. *Id.* at 457; *see also* 28 C.F.R. § 541.8(f) (requiring that the DHO's decision be "based upon at least some facts and, if there is conflicting evidence, on the greater weight of the evidence.").[4]

In the instant case, it is apparent upon review of the record that Anderson was afforded each of the due process protections set forth in *Wolff* in connection with the disciplinary proceedings that form the basis for this action.

Specifically, as set forth above, Anderson was provided with the opportunity to appear before a DHO and was given written notice of the DHO hearing and of his rights at that hearing on April 28, 2009 (*see* Doc. 5-1 at 14, 17), which was more than twenty-four (24) hours before the DHO hearing that was conducted on May 2, 2009.

With regard to his opportunity to call witnesses and present documentary evidence, in his Petition, Anderson contends that the DHO refused to accept a verbal statement from inmate Haynes and destroyed Haynes' written statement that Anderson presented

---

[4] We note that the language contained in 28 C.F.R. § 541.8(f), which is part of the revision of the BOP's Inmate Discipline Program Regulations that became effective June 20, 2011, formerly was contained in 28 C.F.R. § 541.17(f), which was the regulation in place at the time of the May 2, 2009 hearing in this case.

at the hearing in which Haynes "confessed to being the owner of the weapon and [that] he had concealed the weapon between two (2) blankets on the top bunk unbeknownst to Petitioner." (Doc. 1 at 4-5.) He also contends that the DHO refused to accept a written statement from Anderson's cellmate, which would fully support Anderson's claim that the cellmate occupied the top bunk where the weapon was found. (*Id.* at 5.) However, Anderson's contentions are contradicted by the record, which shows that he was advised of his due process rights at the outset of the hearing, and he stated that he had no documentary evidence to present and requested no witnesses. (*See id.* at 8 V.)

Anderson also was afforded the opportunity to have a staff representative at the DHO hearing, but he chose to waive his right to his previously chosen staff representative at the time of the hearing. (*See id.*; Doc. 5-1 at 17.)

Finally, contrary to Anderson's claim in his Petition that he was not provided with the DHO Report for two (2) years (*see* Doc. 1 at 6), Section VIII of the DHO Report reflects that Anderson was advised of the findings, specific evidence relied on, action, and reasons for the action, as well as of his appeal rights, and that a copy of the report, dated August 27, 2009, "has been given to the inmate." (*See* Doc. 5-1 at 10 § VIII.)

Having determined that Anderson was afforded each of the due process protections set forth in *Wolff,* we also find that it is apparent that the DHO's decision was supported by "some evidence" and that the DHO properly documented her findings and specific

evidence relied on in reaching those findings as required by 28 C.F.R. § 541.8(h).[5] In particular, the DHO relied upon the eyewitness account of the reporting staff member, as reflected in the incident report, as well as the fact that Anderson failed to present any statement or evidence which would exculpate him of the charge. (*See* Doc. 5-1 at 8 § V.) The DHO elaborated that she specifically relied on the portion of the Incident Report containing the eyewitness account of Reporting Officer Knotts, describing the discovery of a homemade weapon inside two blankets on the top bunk of a cell occupied by Anderson and another inmate. (*Id.*) The DHO noted that, at the hearing, Anderson stated that he occupied the lower bunk and that the knife did not belong to him, and stated that inmate Haynes was supposed to have put the knife there. (*Id.*) The DHO explained that she was not convinced by Anderson's denial, and that, even if Haynes was the "owner" of the homemade weapon, it is just as plausible that Anderson put the weapon there. (*Id.* at 9 § V.) The DHO also found "unlikely" Haynes' explanation to the investigator that he "dropped" the weapon between two blankets on the top bunk. (*Id.*) The DHO also observed that, while Anderson claimed to sleep on the bottom bunk, BOP records indicate that he is assigned to the top bunk.[6] (*Id.*) In short,

---

[5]The language contained in 28 C.F.R. § 541.8(h) formerly was contained in 28 C.F.R. § 541.17(g), which was in effect at the time of the May 2, 2009 hearing in this case.

[6]Anderson asserts in his Petition that the BOP records concerning bunk assignments that the DHO relied on are "incorrect." (*See* Doc. 1 at 5.) However, he provides no evidence in support of
(continued...)

the DHO found that the greater weight of the evidence indicated Anderson's guilt of the offense of possession of a weapon as Anderson did not provide any evidence to convince the DHO that he was not responsible for possessing a weapon. (*Id.*) Further, the DHO explained that, regardless of whether inmate Haynes was the owner of the weapon, the fact is that it was found in Anderson's assigned cell in his assigned bunk, and inmates are responsible to ensure their assigned quarters are free and clear of contraband at all times.[7] (*Id.*) As such, the DHO observed that it was reasonable to believe that any item in Anderson's cell on his bunk is in his possession as he has access to that area. (*Id.*)

As conceded by Anderson in his Petition, the sanctions that were imposed (forty (40) days loss of good conduct time; thirty (30) days of disciplinary segregation with fifteen (15) days suspended pending 180 days of good conduct; and ninety (90) days each loss of commissary and telephone privileges) are within the allowable range for Greatest Severity Level Prohibited Acts. *See* 28 C.F.R. § 541.3(b), Table 1.[8]

---

[6](...continued)
his assertion, and there is no indication on the record that he raised any issue as to the accuracy of this information at the time of hearing.

[7]In his Petition, Anderson characterizes this finding of the DHO as "false" on the basis that no such policy exists. (*See* Doc. 1 at 6.) To the contrary, BOP Program Statement 5270.09, Inmate Discipline Program, Appendix C, Inmate Responsibilities, Paragraph 4, provides, in relevant part, "It is your responsibility . . . to keep your area free of contraband." *See* BOP Policies, available at http://www.bop.gov Thus, there is no merit to Anderson's claim that the DHO's finding was false because it was based on a made-up policy.

[8]We note that the list of possible sanctions for Greatest Prohibited Act which now is
(continued...)

10

**III.   CONCLUSION**

Because Anderson was afforded all of the due process protections required by *Wolff* and there was "some evidence" to support the DHO's findings, he is not entitled to habeas relief, and therefore, the Petition will be denied. An appropriate Order will enter on today's date.

---

[8](...continued)
contained in 28 C.F.R. § 541.3(b), Table 1 was contained in 28 C.F.R. § 541.13, Tables 3 and 4, at the time of the May 2, 2009 hearing in this case.